UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

STEFANIE JOHNSON O/B/O C.J.F.                    CIVIL ACTION

VERSUS                                           NO:   14-1885

CAROLYN W. COLVIN                                SECTION: "J" (4)
COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION

REPORT AND RECOMMENDATION

I.      Introduction

The claimant, Stefanie Johnson ("Ms. Johnson"), mother to C.J.F., a minor child, seeks

judicial review pursuant to **Title 42 U.S.C. § 405(g)**, of the final decision of the Commissioner of

Social Security. The Commissioner terminated C.J.F.'s Supplemental Security Income Benefits

under Title XVI of the Social Security Act (Title 42 U.S.C. § 1382 et. seq.)

The matter was referred to the undersigned United States Magistrate Judge pursuant to

**Title 28 U.S.C. § 636(b)** and Local Rule 19.02E(b), for the submission of Proposed Findings and

Recommendations.

II.     Facts and Background

On August 23, 2012, Stefanie Johnson ("Ms. Johnson") filed an application for disability

benefits on behalf of her son's mental impairment, which began in 2012 when he was fourteen

years old. (Tr. 53)    Ms. Johnson alleges that her son's disability consisted of a paranoid

schizophrenia. (Tr. 53)

The application was denied at the initial level and she filed a timely request for hearing.

(Tr. 29)   On November 13, 2013, a hearing was held before Administrative Law Judge,

Christopher Juge. (Tr. 29) The ALJ found that C.J.F., an adolescent has not engaged in gainful

acitivity since August 23, 2012, and that while he had severe impairments consisting of Anxiety Disorder and Speech and Language Impairment, they did not meet or medically equal the severity of one of the listed impairments.   (Tr. 32)

On January 21, 2014, the ALJ denied C.J.F.'s request for benefits. (Tr. 26-48). Thereafter, Ms. Johnson requested reconsideration of the ALJ's determination.   The Appeals Council denied her request on June 20, 2014.   (Tr. 2-8).

On appeal, the claimant contends that the Administrative Law Judge (ALJ) erred in denying C.J.F.'s claim for benefits because the ALJ's (1) improperly found that C.J.F. had no marked limitations in domain of attending and completing tasks and (2) improperly found that C.J.F. had no marked limitations in domain of interacting and relating with others.

The Commissioner, on the other hand, contends that the ALJ correctly found that C.J.F. was not disabled.   According to the Commissioner, the ALJ's opinion should be affirmed.

## III.   <u>Standard of Review</u>

To receive disability benefits, a claimant must be "disabled" as defined by the Social Security Act ("SSA").   *See* 42 U.S.C. § 423(a)(1)(D) and 42 U.S.C. § 1382(a).   However, in 1997, Public Law 104-193, *see* Supplemental Security Income; Determining Disability for a Child Under 18, 62 Fed. Reg. 6408 (Feb. 11, 1997) was enacted requiring the Commissioner to revise the regulations for determining a child's disability.

To be found disabled, a child must meet or equal (either medically or functionally) the elements of an impairment listed in Appendix ("App'x") 1 to the Act's implementing regulations (see Reg. § 416.924). Those regulations create a multistep analysis for determining disability:

1. Commissioner must find that the child was not performing substantial gainful activity (Reg. § 416.924(b)).
2. Commissioner must then determine that the child has a severe impairment or combination of impairments (Reg. § 416.924(c)).
3. With a "yes" answer at step 2, the next step is to determine whether the impairment meets or equals an impairment listed in App'x 1 (Reg. § 416.924(d)).

If all three steps have produced "yes" answers, that spells disability. But if the answer at step 3 is "no," all of the listings must be considered to decide whether the child's functional limitations are equal in severity to the functional limitations in any listings (Reg. § 416.924(a)). There are six domains used to determine a child's functional equivalence: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. *See id.*   That degree of severity requires that the child have "marked" limitations in two domains of functioning or an extreme limitation in one domain (Reg. § 416.926a(a)). "Marked" limitations "interfere[] seriously" and "extreme" limitations "interfere[] very seriously" with "[the] ability to independently initiate, sustain, or complete activities" (Reg. §§ 416.926a(e)(2) and (3)). If Commissioner finds that the child meets either standard that alternative determination also means the child is disabled.

The role of the Court on judicial review under Title 42 U.S.C. § 405(g) is limited to determining whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence.   *See Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999).   The Court may not re-weigh the evidence, try issues *de novo* or substitute its judgment for that of the Secretary.   *See id.*   If supported by substantial evidence, then the Secretary's findings are conclusive and must be affirmed.   *Richardson v. Perales*, 402

U.S. 389, 390 (1971).   *See also Wilkinson v. Schweiker*, 640 F.2d 743, 744 (5th Cir. 1981)

(citations omitted).

"Substantial evidence is such relevant evidence as a reasonable mind might accept to

support a conclusion.   *See Ripley v. Chater,* 67 F.3d 552, 555 (5th Cir. 1995).   It is more than a

mere scintilla and less than a preponderance."   *See id.* It must do more than create a suspicion of

the existence of the fact to be established, but no "substantial evidence" will be found only when

there is a "conspicuous absence of credible choices" or "no contrary medical evidence."   *Payne*

*v. Weinberger*, 480 F.2d 1006, 1007 (5th Cir. 1973); *Hemphill v. Weinberger*, 483 F.2d 1137, 1138

(5th Cir. 1973).

A single piece of evidence will not satisfy the substantiality test if the ALJ ignores, or fails

to resolve, a conflict created by countervailing evidence.   *Kent v. Schweiker*, 710 F.2d 110, 114

(3d Cir. 1983).   Evidence is not substantial if it is overwhelmed by other evidence, particularly

that offered by treating physicians. *See id.*

IV.   <u>Analysis</u>

    A.   <u>Acquiring and Using Information</u>

Johnson contends that the ALJ erred when he concluded that C.J.F. has less than marked

limitation in acquiring and using information. As a result, Johnson contends that the ALJ's

decision is not based upon substantial evidence.

The Commissioner contends that the ALJ properly concluded that C.J.F. showed no

marked limitations in any domain, and therefore did not functionally equal a listed impairment.

The Commissioner contends that the ALJ's decision illustrates that he considered "all of the

relevant evidence in the record." (Tr. R. Doc. 22)   According to the Commissioner, substantial

evidence supports the ALJ's findings for limitations in each domain.

The ALJ found that C.J.F. had less than marked limitation in acquiring and using information.   He noted that on the teacher's questionnaire, C.J.F. was in the 6th grade and functioning on the 3rd grade level.   He noted further the psychological consultative examination performed on January 23, 2013, shows that the WISC-IV results were invalid due to his failure to cooperate and because he gave up on the testing.

The ALJ further noted that C.J.F.'s profile was not that of a mentally deficient youth and that he did not enter special education until after the 4th grade.   The diagnosis was provisional anxiety disorder not otherwise specified.   In reference to the hospital diagnoses of December 2012, the treating psychologist noted that this was an early age for a psychotic break and that the psychologist did not see any behavior consistent with psychosis, although C.J.F. was medicated. He noted that C.J.F. indicated that he had fun in the hospital.

The ALJ further indicated that C.J.F.'s mother stated that he was capable of reading and understanding what he reads. He noted that although C.J.F. was diagnosed on occasion with attention deficit hyperactivity disorder ("ADHD"), the medical record does not indicate that he had ever consistently been administered the recommended medication, had any counseling, or had other non-medication treatment for ADHD.   The ALJ further noted that the mental status examination findings revealed that C.J.F.'s condition was somewhat flattened possibly by medication, that he had moderate anxiety, and that he was alert.   He further noted that C.J.F.'s speech was fully intelligible and that his activity level, pace, attention and concentration were all normal.

The Social Security Administration Regulations provide that evidence of acquiring and using information for adolescents (age 12 to attainment of age 18) consists of the following.

- Continues to demonstrate learning in academic assignments (for example, in composition, during classroom discussion, and by school laboratory experiments).
- Applies learning in daily situations without assistance (for example, going to the store, getting a book from the library, or using public transportation).
- Comprehends and expresses simple and complex ideas using increasingly complex language in academic and daily living situations.
- Learns to apply knowledge in practical ways that will help in employment (for example, carrying out instructions, completing a job application, or being interviewed by a potential employer).
- Plans ahead for future activities.
- Begins realistic occupational planning

Examples of limitations for teenager such as C.J.F. in the domain of "acquiring and using information" consist of: (1) Does not demonstrate an understanding of words that describe concepts such as space, size, or time (for example, inside/outside, big/little, morning/night; (2) Cannot rhyme words or the sounds in words; (3) Has difficulty remembering what was learned in school the day before; (4) Does not use language appropriate for age (5) Is not developing "readiness skills" the same as peers (for example, learning to count, reciting ABCs, scribbling); (6) Is not reading, writing, or doing arithmetic at appropriate grade level; (7) Has difficulty comprehending written or oral directions; (8) Struggles with following simple instructions; and (9) Talks only in short, simple sentences. 20 CFR 416.926; SSR 09-3P (S.S.A.), 2009 WL 396025 (Feb. 17, 2009).

According to the function report, Johnson was able to read and understand sentences in comics and cartoons.   He was able to read stories in books, magazines, or newspapers. (Tr. 142) He was able to spell words of more than four letters, tell time, and add and subtract numbers over

ten. (Tr. 142)   He is able to understand money and make correct change and understand, carry out and remember simple instructions. (Tr. 142)   The function report also indicated that while C.J.F. has impairments that affect his activities or behavior with other people, he has friends of his age and generally gets along with his school teachers. (Tr. 143)

The function report also indicates C.J.F.'s ability to pay attention and stick with a task, including his ability to work on arts and crafts projects, keeping busy on his own, finishing things he starts, and completing his homework on time. (Tr. 145)   His mother indicated that C.J.F. was prescribed a form of Ritalin, which she has not given him because his other symptoms progressed. (Tr. 153).

The Teacher Questionnaire was completed.    According to the teacher, C.J.F. has a serious problem with comprehending oral instructions, understanding school and content vocabulary, reading and comprehending written material, and comprehending and doing math problems. (Tr. 161).    The teacher also indicated that he has a serious problem providing organized oral explanations and adequate descriptions, learning new material, recalling and applying previously learned material, and applying problem-solving skills in class discussions.   (Tr. 161)   Finally, the teacher, who notes that she had known C.J.F. for three months in 2012, indicates that C.J.F. has a very serious problem expressing ideas in written form. (Tr. 161)

A disability condition assessment was also completed by the school psychologist and educational diagnostician indicating that C.J.F. suffers with Schizophrenia, Moderate Intellectual Deficiency and Impaired Speech. (Tr. 203).   The report indicates that C.J.F. obtained a standard score of 38 which places his study skills below the mean, and indicates a performance that, when compared to children of similar age and gender in the normative sample, is in the low range.   (Tr.

217)    The State Agency medical consultant, Sandra Durdin, Ph. D., declined to make a finding

regarding his ability to acquire and use information due to the lack of records to compare it to.

(Tr. 66)

To establish a functional impairment equal to the listings, the claimant has to show an

extreme limitation in one domain or a marked impairment in more than one. § 416.926a(d).

Lengthy definitions for marked and extreme are set out in § 416.926a(e). Each includes

instructions on how to use test results:

> "Marked" limitation also means a limitation that is "more than moderate" but "less than
> **extreme**." It is the equivalent of the functioning we would expect to find on standardized
> **testing** with scores that are at least two, but less than three, standard deviations below the
> mean.

§ 416.926a(e)(2)(i). "Extreme" limitation is the rating given to the worst limitations. However,

"extreme limitation" does not necessarily mean a total lack or loss of ability to function. It is the

equivalent of the functioning that is expected on standardized testing with scores that are at least

three standard deviations below the mean. § 416.926 a(e)(3)(i).

In reviewing the record, the Court notes that a comprehensive psychoeducational

assessment was performed and the report was issued on April 25, 2013. (Tr. 204-244) The ALJ

noted that the test submitted by the claimant was not the preferred Wechsler series and that the

WISC-IV[1] conducted by a clinical psychologist was invalid because C.J.F. quit working on picture

concepts and matrix reasoning. The ALJ further noted that the test submitted was invalid because

---

[1]Wechsler Intelligence Scale for Children is an individually administered <u>intelligence test</u> for children
between the ages of 6 and 16 inclusive that can be completed without reading or writing. Encyclopedia of Mental
Disorders.com, Weschsler Intelligence Scale for Children, http://www.minddisorders.com/Py-Z/Wechsler-
Intelligence-Scale-for-Children.html (last visited Nov. 24, 2015).

what C.J.F. was expected to do was too complex for his age.   The psychologist thought that C.J.F.

was not a youth who was mentally deficient but noted that the face sheet listed a learning disorder.

(Tr. 306)

In observing the results of the psychoeducational assessment, the educational team

conducted a Behavior Assessment System for Children (BASC-2; Reynolds & Kamphaus, 2004)[2]

which was designed to assess areas of adaptive and problem behaviors and not intelligence as

required by the SSA.[3] (Tr. 214) The educational team also conducted a Kaufman Assessment

Battery for Children, which is designed to measure mental processing and cognitive ability in

children.   The ALJ concluded that this test gave credence to the conclusion that C.J.F. had a

cognitive disorder.   (Tr. 37)

The ALJ considered and noted that C.J.F. was using the services of a licensed specialist

school psychologist and speech and language pathologist among others.   He noted that the school

psychologist concluded that C.J.F. had significant emotional and cognitive deficits that affect his

function. (Tr. 37)[4]   The school also conducted a Woodcock-Johnson III test, which is not

---

[2]The BASC–2 is described as "an integrated system designed to facilitate the differential diagnosis and classification of a variety of emotional and behavioral disorders of children and to aid in the design of treatment plans." *Id.* at 254.

[3]The IQ requirements denoting a disabling impairment under the Listing of Impairments are meant for application in conjunction with tests of general intelligence having IQ means of approximately 100 and standard deviations of approximately 15 in the general population at large (e.g., the Wechsler series (WAIS-R, WAIS-III, WISC-R, WISC-III, WPPSI, and WPPSI-R and the revised Stanford-Binet scales.)

[4]The Assessment was signed off by a team of educational specialist including C.J.F.'s mother and a psychologist. According to the assessment the teachers rated C.J.F.'s functional communication skills fell 1.90 standard deviations below the mean, he had difficulty learning problems which were 3.30 standard deviations above the mean indicating a clinically significant range compared to children of a similar age and in the area of study skills he was 1.30 standard deviations below the mean. (Tr. 216-217)     Further, C.J.F. on the Quantitative Concepts test which measured mathematical concepts, symbols and vocabulary resulted in skills 5.60 standard deviations below the mean indicating very low functioning relative to individuals of the same age. (Tr. 225)

determinative of his mental status but is a test used to assess academic achievement.  *See Green v. Astrue,* No. 09-1098, 2011 WL 1440363 *6 (M.D. La. Feb. 15,2011).

Although C.J.F. visited with a psychiatrist, John Fidanza, in August 21, 2012, there is no evidence that he conducted a WISC-IV test. Nevertheless, the psychiatrist concluded that C.J.F.'s cognitive functioning was abnormal and he estimated that his intelligence was also not normal and low. (Tr. 256)   He also concluded that C.J.F. was disoriented and had impaired short term memory.   Dr. Fidanza recommended Focalin to treat his short term memory or ADHD. (Tr. 257) The finding of the psychiatrist that C.J.F. had impaired short term memory is not inconsistent with the overall finding of moderate but not marked limitations.

In the area of assessing and using information the evidence of record indicates that C.J.F. was limited but he did not meet the marked limitation requirement.   According to the ALJ, the IQ Test performed by the school was not the WISCV-IV test, which is the SSA's approved test. While the ALJ considered the IQ Test, he did not give controlling weight to it.   He also noted the absence of a report card, which would have aided in determining the degree of cognitive impairment.

Furthermore the ALJ noted that C.J.F. was limited in some areas but that his function in day-to-day activities was not seriously or very seriously limited.   For example, he noted Ms. Johnson's statement that C.J.F. was able to perform age appropriate activity, that he was not limited in his communication, and that he was able to read and understand sentences among other things.

He also noted the psychologist's finding that C.J.F. was not a mentally deficient youth. He further noted the inconsistency in an earlier finding of psychosis with C.J.F.'s declaration of having fun while hospitalized. *Vallian v. Astrue, 2011 WL* 3648127 *17(S.D. Tex. 7/26/11) (citing

416.926a(4)(ii)(A)-(B)).   Additionally, the ALJ considered his mother's report along with C.J.F.'s

testimony that he got C's, A's and two D's in his classes. (Tr.59) While the evidence shows some

limitations; they were not marked in nature.   Therefore, the ALJ's decision that C.J.F. had less

than marked limitation in acquiring and using information is supported by substantial evidence.

### B.   <u>Interacting and Relating with Others</u>

Next, the claimant alleges that the ALJ erred when he concluded that C.J.F. had less than

marked limitation in interacting and relating to others.   The claimant contends that in social

functioning, C.J.F. was diagnosed with schizophrenia, paranoid type, he presented with a flat affect

and had poor speech. (Tr. 298; Tr12) The claimant contends that there is also evidence that the

speech therapist noted C.J.F.'s difficulty with social interaction and his lack of oral communication

which inhibits his ability to fully participate in class. (Tr. 169; 12)   He further contends that the

opinion is not based upon substantial evidence because he failed to consider the standard deviation

evidence in the record.

The Commissioner contends that the ALJ's finding that C.J.F. was less than markedly

limited is based upon substantial evidence.   The Commissioner points to the ALJ's observation

that C.J.F. was hospitalized in December 2012 but noted that it was not recurrent. C.J.F. was

further able to socialize because he had friends and testified to having several friends that he played

around with and helped with homework.   Therefore, the Commissioner contends that the ALJ's

finding of less than marked limitation in interacting and relating with others is based upon

substantial evidence.

The ALJ found that C.J.F. had less than marked limitation in interacting and relating with

others.   He noted that C.J.F. was hospitalized from December 5, 2012, to December 17, 2012, for

ingesting Germ X although he stated that he did not swallow it.    The ALJ noted that Germ X was only on C.J.F.'s hands.    He noted that upon discharge, C.J.F. was diagnosed with paranoid schizophrenia and depression not otherwise specified and released on Fluoxetine and Zyprexa. He further noted that this hospital visit was the only instance of hospitalization C.J.F. experienced. The ALJ noted that C.J.F.'s aggressive behavior improved after he began the medication.   He further noted that C.J.F. has friends.   The ALJ also considered that the Licensed Professional Counselor concluded that C.J.F. had oppositional defiant disorder but questioned the conclusion because it was not rendered by an acceptable medical source.   The ALJ noted that given all of the available evidence C.J.F. had severe emotional and cognitive deficits that affect his ability to function but that it did not restrict him from engaging in many age appropriate activities such that he was not disabled. (Tr. 38)

Based upon a careful review of the record, the undersigned finds that the ALJ's failure to discuss the tests results from the school evaluation was not an error. The ALJ considered all the relevant evidence, and his decision that C.J.F. is not disabled is supported by substantial evidence. Plaintiff is correct that the tests results from the school evaluation is a valuable resource in determining the severity of a child's impairment and how a child typically functions compared to other children his age. 20 C.F.R. § 416.913(d) (These sources may provide evidence to show the severity of [a claimant's] impairment(s) and how it affects [a claimant's] ability to work or, if [the claimant is] a child, how [the claimant] typically function compared to children [the claimant's] age who do not have impairments.).

However, the regulations allow an ALJ to determine that "standard deviation information," even if it is available, does not provide an accurate indication of a child's functioning

in a given domain. *See id.* § 416.926a(e)(4)(ii)(A)-(B). In fact, they allow an ALJ to base his decision solely on information about the child's day-to-day functioning. *Id.*   Given the scope of evidence that the ALJ considered, the Court finds that the ALJ's decision is based upon substantial evidence.

**V.      Conclusion**

It is the **RECOMMENDATION OF THIS COURT** that the ALJ's decision affirming the cessation of Supplemental Security Income Benefits be **AFFIRMED.**

A party's failure to file written objections to the Proposed Findings, Conclusions, and Recommendation in a Magistrate Judge's Report and Recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court, provided that the party has been served with notice that such consequences will result from a failure to object.   *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this 30th day of November 2015.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**